UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| WILLIAM B. UPTON, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CAUSE NO. 1:23-cv-00142-SLC |
| | ) |
| COMMISSIONER OF SOCIAL | ) |
| SECURITY, *sued as Martin O'Malley,* | ) |
| *Commissioner of the Social Security* | ) |
| *Administration*,[1] | ) |
| | ) |
| Defendant. | ) |

## OPINION AND ORDER

Plaintiff William B. Upton appeals to the district court from a final decision of the Commissioner of Social Security ("Commissioner") denying his application under the Social Security Act (the "Act") for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). (ECF 1).[2] For the following reasons, the Commissioner's decision will be AFFIRMED.

### I. FACTUAL AND PROCEDURAL HISTORY

Upton applied for DIB and SSI in 2021, alleging disability as of November 26, 2020, which he subsequently amended to March 4, 2021. (ECF 11 Administrative Record ("AR") 16, 46-47, 247-59).[3] Upton's claim was denied initially and upon reconsideration. (AR 88-131). On July 29,

---

[1] Martin O'Malley became the Commissioner of Social Security on December 20, 2023, and thus, pursuant to Federal Rule of Civil Procedure 25(d), he is automatically substituted for Kilolo Kijakazi in this case. *See Melissa R. v. O'Malley,* No. 1:22-cv-02404-TAB-TWP, 2023 WL 8866397, at *1 n.1 (S.D. Ind. Dec. 22, 2023).

[2] The parties have consented to the exercise of jurisdiction by a Magistrate Judge. (ECF 9, 10).

[3] The AR page numbers cited herein correspond to the ECF-generated page numbers displayed at the top center of the screen when the AR is open in ECF, rather than the page numbers printed in the lower right corner of each page.

2022, administrative law judge ("ALJ") Kathleen Winters conducted an administrative hearing (AR 42-69), and on October 4, 2022, rendered an unfavorable decision to Upton, concluding that he was not disabled because he could perform a significant number of unskilled, light-exertional jobs in the national economy despite limitations caused by his impairments (AR 16-29). The Appeals Council denied Upton's request for review (AR 7-12), at which point the ALJ's decision became the final decision of the Commissioner. *See* 20 C.F.R. §§ 404.981, 416.1481.

On April 4, 2023, Upton filed a complaint in this Court appealing the Commissioner's final decision. (ECF 1). In his opening brief, Upton argues that the ALJ erred: (1) by playing doctor when evaluating his mental impairments and failing to account for his mental impairments when assigning the mental residual functional capacity ("RFC"); and (2) by cherry-picking the record when considering the evidence and determining the physical RFC. (ECF 18 at 6).

On the date of the ALJ's decision, Upton was fifty-two years old (AR 247); had an eleventh grade education (AR 54, 299); and had past relevant work as a tow motor operator, helper, fabricator, muffler technician, and detailer (AR 27, 62; *see also* AR 282, 299). Upton alleged disability due to attention deficit/hyperactivity disorder (ADHD), combined presentation; depressive disorder; renal calculus, left; coronary artery disease; hypertriglyceridemia; degenerative disc disease, lumbar; thoracic spine anterior osteophytes on C5-9; and anxiety. (ECF 18 at 5).

## II. STANDARD OF REVIEW

Section 405(g) of the Act grants this Court the "power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the

---

Upton filed a previous application for disability and received an unfavorable decision on March 3, 2021, which is why he amended his onset date to March 4, 2021. (AR 46-47).

Commissioner . . . , with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). The Court's task is limited to determining whether the ALJ's factual findings are supported by substantial evidence, which means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Schmidt v. Barnhart*, 395 F.3d 737, 744 (7th Cir. 2005) (citation and quotation marks omitted). The decision will be reversed "only if [it is] not supported by substantial evidence or if the Commissioner applied an erroneous legal standard." *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000) (citation omitted).

To determine if substantial evidence exists, the Court "review[s] the entire administrative record, but do[es] not reweigh the evidence, resolve conflicts, decide questions of credibility, or substitute [its] own judgment for that of the Commissioner." *Id.* (citations omitted). "Rather, if the findings of the Commissioner . . . are supported by substantial evidence, they are conclusive." *Jens v. Barnhart*, 347 F.3d 209, 212 (7th Cir. 2003) (citation omitted). "In other words, so long as, in light of all the evidence, reasonable minds could differ concerning whether [the claimant] is disabled, we must affirm the ALJ's decision denying benefits." *Books v. Chater*, 91 F.3d 972, 978 (7th Cir. 1996).

### III. ANALYSIS

*A. The Law*

Under the Act, a claimant seeking DIB or SSI must establish that he is "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A); *see also id.* §§ 416(i)(1), 423(d)(1)(A). A physical or mental impairment is "an impairment that results from anatomical, physiological, or

3

psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." *Id.* §§ 423(d)(3), 1382c(a)(3)(D).

The Commissioner evaluates disability claims pursuant to a five-step evaluation process, requiring consideration of the following issues, in sequence: (1) whether the claimant is currently unemployed in substantial gainful activity, (2) whether he has a severe impairment, (3) whether his impairment is one that the Commissioner considers conclusively disabling, (4) whether he is incapable of performing his past relevant work, and (5) whether he is incapable of performing any work in the national economy. *Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001); *see also* 20 C.F.R. §§ 404.1520, 416.920.[4] "[A]n affirmative answer leads either to the next step, or, on Steps 3 and 5, to a finding that the claimant is disabled." *Zurawski v. Halter*, 245 F.3d 881, 886 (7th Cir. 2001) (citation omitted). "A negative answer at any point, other than Step 3, ends the inquiry and leads to a determination that a claimant is not disabled." *Id.* (citation omitted). The burden of proof lies with the claimant at every step except the fifth, where it shifts to the Commissioner. *Clifford*, 227 F.3d at 868.

### B. The Commissioner's Final Decision

In the Commissioner's final decision, the ALJ found at step one of the five-step sequential analysis that Upton had worked after his amended alleged onset date of March 4, 2021, but such work did not rise to the level of substantial gainful activity. (AR 19). At step two, the ALJ found that Upton had the following severe impairments: degenerative disc disease and foraminal stenosis of the cervical spine, and coronary artery disease status-post stenting with chronic heart

---

[4] Before performing steps four and five, the ALJ must determine the claimant's RFC or what tasks he can do despite his limitations. 20 C.F.R §§ 404.1520(e), 404.1545(a), 416.920(e), 416.945(a). The RFC is then used during steps four and five to help determine what, if any, employment the claimant is capable of. *Id.* §§ 404.1520(e), 416.920(e).

4

failure. (*Id.*). At step three, the ALJ concluded that Upton did not have an impairment or combination of impairments severe enough to meet or equal a listing in 20 C.F.R. Part 404, Subpart P, Appendix 1. (AR 21).

The ALJ assigned Upton the following RFC:

> [T]he claimant has the [RFC] to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except he can occasionally climb ramps or stairs, stoop, kneel, crouch, or crawl; can never climb ladders, ropes, or scaffolds or balance, as that term is used vocationally. With occasional exposure to wetness and dangerous moving machinery, and no exposure to unprotected heights. Work with an option to change positions no more frequently than every 30 minutes, while remaining on-task.

(AR 22).

The ALJ determined at step four that given the foregoing RFC, Upton could not perform any of his past relevant work. (AR 26-27). However, at step five the ALJ found that a hypothetical individual of Upton's age, education, experience, and RFC could perform a significant number of unskilled, light-exertional jobs in the national economy, including collator operator, cashier, small parts assembler, and routing clerk. (AR 27-28). Accordingly, Upton's applications for DIB and SSI were denied. (AR 29).

### C. Upton's Mental Health Impairments

Upton first argues that the ALJ erred by disregarding a material portion of the examining mental health specialist of record and by rejecting the opinions of the reviewing state agency psychologists. (ECF 18 at 8-13). Upton asserts that in doing so, the ALJ inappropriately "played doctor" when determining that Upton did not have a severe mental impairment and by failing to include any mental limitations in the RFC. (*Id.*).[5]

---

[5] In his opening brief, Upton also argued that the ALJ "did not review the 'paragraph B' criteria at all . . . ." (*Id* at 9). Upton, however, retracts this argument in his reply, conceding that it "was incorrectly stated." (ECF 27 at 2

5

Upton underwent a consultative mental health evaluation by Dan L. Boen, Ph.D., HSPP, on October 7, 2021, at the request of the state agency. (AR 509-16). Dr. Boen found that Upton's mood, behavior, affect, thought form, fund of information, and long-term memory were normal, but that his short-term memory was "significantly below normal," his concentration was "moderately below normal," and his immediate recall, judgment, and level of insight were "mildly below normal." (AR 515). Dr. Boen diagnosed Upton with ADHD, combined presentation, and depressive disorder due to another medical condition, with depressive features. (*Id.*). Dr. Boen concluded that Upton would have difficulty remembering what he was asked to do in a job and difficulty concentrating on a job and staying on task, but no difficulty in getting along with a supervisor or coworkers and no difficulty in understanding what he was asked to on a job. (AR 515-16).

A state agency psychologist, Stacia L. Hill, Ph.D., reviewed Upton's record on October 12, 2021, including Dr. Boen's evaluation, and opined that Upton had moderate difficulties in understanding, remembering, and applying information, and in concentrating, persisting, or maintaining pace, but mild difficulties in interacting with others and adapting or managing onself. (AR 91-92, 94-95, 102-03, 106). Dr. Hill concluded that Upton could "understand, carry out and remember simple instructions; . . . make judgments commensurate with functions of simple, repetitive tasks; . . . respond appropriately to brief supervision and interactions with coworkers and work situations; . . . [and] deal with changes in a routine work setting." (AR 95, 106). A second reviewing state agency psychologist, B. Randall Horton, Psy.D, concluded the same on December 22, 2021. (AR 112-13, 116-17, 123-24, 127-28).

---

n.1). As Upton acknowledges in his reply brief, "[t]he ALJ did review the 'paragraph B' criteria and concluded that there was no more than a 'mild limitation' in all areas." (*Id.* (citing AR 20)).

6

The ALJ discussed the opinions of the mental health specialists of record, but ultimately rejected them all to the extent they included any mental health limitations. The ALJ found Dr. Hill's and Dr. Horton's opinions "not persuasive" as "inconsistent with the record as a whole," specifically noting that Upton "did not receive any mental health treatment" and "routinely had normal mental status findings." (AR 25). The ALJ further reasoned:

> [D]uring his psychological consultative examination [with Dr. Boen], the claimant had below normal findings with his concentration, short-term memory, and insight and judgment, but the remainder of his mental status findings were all normal, including normal long-term memory, average fund of information, and normal behavior, mood, and affect. These objective findings show the claimant does not have a severe mental impairment.

(*Id.* (citations omitted)). The ALJ additionally stated: "Despite the abnormal mental status findings during Dr. Boen's examination, these findings were during a one-time examination of the claimant, and the remainder of the record routinely shows he had normal mental status findings." (AR 26 (citations omitted)).

Upton contends that the ALJ improperly "played doctor" by failing to incorporate the mental limitations opined by Dr. Boen and the state agency psychologists in the RFC. Not so. "The administrative law judge is not required or indeed permitted to accept medical evidence if it is refuted by other evidence—which need not itself be medical in nature . . . ." *Simila v. Astrue*, 573 F.3d 503, 515 (7th Cir. 2009) (ellipsis in original) (citation, brackets, and emphasis omitted); *see also Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 356 (7th Cir. 2005). "[T]he determination of a claimant's RFC is a matter for the ALJ alone to decide." *Mitchel A. v. Saul*, No. 19 CV 1757, 2020 WL 2324425, at *10 (N.D. Ill. May 11, 2020) (citing 20 C.F.R. § 404.1527(d); *Thomas v. Colvin*, 745 F.3d 802, 808 (7th Cir. 2014)). "While an ALJ must consider the entire record in forming an RFC . . . the ALJ is not required to rely entirely on any

7

particular physician's opinion." *Id.* (citation, brackets, and quotation marks omitted) (ellipsis in original).

As the ALJ observed, the opinions of Dr. Boen and the state agency psychologists are adequately refuted by other medical and nonmedical evidence of record. The ALJ observed that Upton's presentation to various other medical sources with respect to his mental status was largely within normal limits. (AR 20, 25-26; *see, e.g.*, AR 448 ("Attention normal. . . . Behavior normal. Behavior is cooperative."), 453 ("Mood normal. . . . Behavior normal."), 472 ("Ok energy level, [n]o memory loss."), 478 ("Patient was alert and had appropriate eye contact, speech and mood. Patient's memory and concentration were normal."), 561 ("Ok energy level, [n]o memory loss."), 563 ("No apparent distress. Alert and oriented to person, place and time."), 567 ("Ok energy level, [n]o memory loss"), 583 ("Patient reports . . . no memory loss, . . . . no depression, no suicidal thoughts, no anxiety, no difficulty getting to sleep, no difficulty staying sleep, and no alcohol abuse."), 610 ("Cooperative, appropriate mood & affect."), 739 ("Ok energy level, [n]o memory loss."), 745 (same), 836 ("He is alert and oriented to person, place, and time. . . . Behavior normal. . . . Thought content normal."); *but see* AR 482 ("Reports persistent sadness. Denies ever seeing a provider regarding this or being on meds or going to therapy."), 577 ("[P]atient states he is under a great deal of stress having gone through a divorce [the] last couple years, having to go back to Georgia for a court date, trying to get on disability stating that he lost his full part-time job as well. . . . I do feel that some anxiety is contributing to his symptoms due to his situational circumstances.")). As the ALJ correctly observed, for the most part these notes of the non-mental health specialists of record undercut the conclusions of Dr. Boen and the state agency psychologists. *See Felts v. Saul*, 797 F. App'x 266, 269-70 (7th

8

Cir. 2019) (finding that the claimant's claim that he suffered serious concentration problems was undermined by the record's lack of any compelling complaints of problems with concentration and his ability to perform a wide variety of daily activities); *Denton v. Astrue*, 596 F.3d 419, 423-24 (7th Cir. 2010) (affirming the ALJ's finding that the claimant's depression was a non-severe impairment where the claimant never mentioned a lack of interest in activities, social isolation, or mood swings to her treating doctors).

Furthermore, the ALJ did not solely rely on the medical findings of the non-mental health specialists when discounting the opinions of Dr. Boen and the state agency psychologists and finding Upton's mental impairment was non-severe. Rather, the ALJ cited five other reasons for finding that Upton had, at most, just mild mental limitations. These reasons include that Upton had not been hospitalized for a psychiatric reason; that he had not sought counseling from a psychiatrist, psychologist, or counselor since he was eighteen years old; that he was not taking any medications for his mental health issues; that he engaged in a full range of daily activities; and that he worked part-time through May 2022. (AR 20, 22-23, 25-26).

The first of these five reasons does not particularly bolster the ALJ's finding. "A lack of psychiatric hospitalizations is not necessarily inconsistent with a severe mental impairment." *Gillim v. Colvin*, No. 11 C 7146, 2013 WL 1901630, at *6 (N.D. Ill. May 7, 2013) (citation omitted); *see Adkins v. Astrue*, No. 309-CV-217, 2010 WL 3782388, at *9 (N.D. Ind. Sept. 21, 2010) (noting that there was no evidence in the record "that severe mental impairments necessarily (or even generally) result in hospitalization"). The remaining four reasons, however, adequately support the ALJ's decision to discount the opinions of Dr. Boen and the state agency psychologists.

As the ALJ noted, while Upton received care for mental health issues when he was a child, he had not participated in mental health counseling from a psychiatrist, psychologist, or therapist since he was eighteen years old. (AR 23, 56). That is, Upton had not been treated by a mental health specialist in decades. *See Mitchel A.*, 2020 WL 2324425, at *11 (rejecting the claimant's argument that the ALJ "played doctor" when relying on nonmedical evidence, including that the claimant was not currently seeing a counselor or psychiatrist for his depression, rather than relying entirely on a specific medical opinion). "[The claimant] bears the burden of producing medical records showing [his] impairment, and if [he] never sought medical treatment for a condition, then [he] cannot meet that burden." *Denton*, 596 F.3d at 424 (citations omitted); *Borland v. Astrue*, No. 10-C-0092, 2010 WL 5209380, at *9 (E.D. Wis. Dec. 16, 2010) (affirming the ALJ's finding that the claimant's mental impairment was non-severe where the claimant had received no specialized or sustained treatment for a mental illness).

The ALJ also considered that Upton was "not taking any medications for the treatment of any mental health issues." (AR 23). Upton takes issue with the ALJ's observation in this respect, asserting that he had been on Escitalopram for anxiety and depression "from at least July 2019 through August 2021." (ECF 18 at 12). Nevertheless, the ALJ's observation is not inaccurate. At the July 29, 2022, hearing, Upton testified that he was not taking any medications for mental health issues. (AR 56). Thus, at that point, Upton had not been taking any medications for mental health issues for almost a year. "[A]n ALJ is entitled to presume that a claimant represented by counsel in the administrative hearings has made his best case." *Sears v. Bowen*, 840 F.2d 394, 402 (7th Cir. 1988) (citation omitted).

The ALJ also considered Upton's ability to engage in a wide variety of daily activities,

10

including living independently, caring for his dog, driving to visit friends, tending to his self-care, preparing meals, mowing his yard, doing his laundry at a laundry mat, shopping, managing his finances, and attending church. (AR 20, 22-23). "[I]t is entirely permissible to examine all of the evidence, including a claimant's daily activities, to assess whether testimony about the effects of his impairments was credible or exaggerated." *Alvarado v. Colvin*, 836 F.3d 744, 750 (7th Cir. 2016) (citations and internal quotation marks omitted); *see Narvaez v. Saul*, No. 1:20-CV-120 DRL-MGG, 2021 WL 4167521, at *3 (N.D. Ind. Sept. 13, 2021) ("[T]he ALJ did not improperly rely on daily activities and instead used activities of daily living as one factor among many in finding [the claimant's] mental impairments to be non-severe." (citation omitted)).

Finally, the ALJ also considered that Upton continued to work part-time after his alleged onset date. (AR 20). The ALJ was entitled to consider Upton's ability to work part-time when weighing the medical opinions and assessing the severity of his mental health impairment, properly stopping short of equating this work with an ability to work full-time. *See Berger v. Astrue*, 516 F.3d 539, 545 (7th Cir. 2008) ("Although the diminished number of hours per week indicated that [the claimant] was not at his best, the fact that he could perform some work cuts against his claim that he was totally disabled."); *Dorothy B. v. Berryhill*, No. 18 CV 50017, 2019 WL 2325998, at *4-5 (N.D. Ill. May 31, 2019) ("The ALJ was entitled to consider [the claimant's] part-time work [after her alleged onset date] when weighing the opinion evidence."); *Olson v. Berryhill*, No. 16-2194, 2018 WL 1341504, at *5 (C.D. Ill. Jan. 31, 2018) ("While one's ability to work part-time does not necessarily translate to full-time work, the ALJ did not make that assumption. Instead, the ALJ's conclusion was based on many factors.").

Consequently, the opinions of Dr. Boen and the state agency psychologists assigning mental

limitations are adequately refuted by other evidence of record—namely, the observation of Upton's largely normal mental status findings by the non-mental health specialists, his lack of participation in specialized mental health evaluation or counseling, his lack of taking any medication for mental health issues, his fairly full range of daily activities, and his performance of part-time work after his alleged onset date. *See Sawyer v. Colvin*, 512 F. App'x 603, 611 (7th Cir. 2013) ("[A] mild, or even a moderate, limitation in an area of mental functioning does not prevent an individual from functioning satisfactorily." (citation and internal quotation marks omitted)). As such, the ALJ reasonably discounted the limitations opined by Dr. Boen and the state agency psychologists and reasonably concluded that Upton's mental impairment was non-severe and required no specific limitations in the RFC.

*D. Cherry-Picking the Record When Assigning the Physical RFC*

In his second argument, Upton argues that the ALJ erred by failing to consider his physical therapy records and by "cherry picking" his X-ray results when assigning the physical RFC. (ECF 18 at 13). This argument, too, is unavailing.

"Although an ALJ need not mention every snippet of evidence in the record, the ALJ must connect the evidence to the conclusion; in so doing, [she] may not ignore entire lines of contrary evidence." *Arnett v. Astrue*, 676 F.3d 586, 592 (7th Cir. 2012) (collecting cases). That is, an ALJ may not "cherry-pick" the record by citing only the evidence that supports her outcome; rather, she must "consider[] the record fairly." *Lord v. Astrue*, No. 1:11-CV-00356, 2012 WL 4322742, at 12 (N.D. Ind. Sept. 19, 2012).

1. Physical Therapy Records

Upton argues that the ALJ erred by failing to discuss his 2021 physical therapy

records—two sessions in total—revealing "functional limitations." (ECF 18 at 14-15; *see* AR 496-502). He contends these physical therapy records are contrary to the ALJ's assigned RFC for a reduced range of light work. (ECF 18 at 15).

Specifically, Upton cites a September 29, 2021, physical therapy progress note documenting his subjective report of a "severe" limitation in lifting objects, a "moderate" limitation in walking on uneven terrain, and a "mild" limitation in bending forward. (*Id.* at 14-15; AR 500). The note also reflects that he had some tenderness "to palpation along bilateral lumbar paraspinals and tightness . . . in thoracic paraspinals, and reported problems of pain and reduced range of motion and strength limiting functional activities and a decreased participation in recreational activities. (ECF 18 at 14; AR 501). He also cites a September 14, 2021, initial evaluation in which the physical therapist wrote: "Objective findings reveal decreased and painful trunk ROM, decreased postural control, lumbar joint and muscular tenderness/tightness, and reduced BLE/core/back strength for age. These limitations are contributing to their ability to perform: lifting, bending forward, prone lying, and walking on uneven terrain painfree." (ECF 18 at 15; AR 505).

The two physical therapy sessions, and a subsequent discharge note (AR 496-99), do not rise to the level of an "entire line[] of contrary evidence" that the ALJ ignored. *Arnett*, 676 F.3d at 592. While the ALJ did not specifically discuss these records, J. Sands, M.D., a reviewing state agency physician, did review them in December 2021 (AR 111) and concluded that Upton could lift ten pounds frequently and twenty pounds occasionally; stand or walk for six hours in an eight-hour workday; sit for six hours in an eight-hour workday; and occasionally balance, stoop, kneel, crouch, crawl and climb ramps and stairs, but never climb ladders, ropes, or

13

scaffolds (AR 114). The ALJ found the reviewing state agency physicians' opinions "mostly persuasive," and therefore relied on them when limiting Upton to a reduced range of light work. (AR 22, 25-26); *see Suess v. Colvin*, 945 F. Supp. 2d 920, 934 (N.D. Ill. 2013) (stating that light work requires a person to lift or carry ten pounds frequently and twenty pounds occasionally, stand or walk six hours in an eight-hour workday, and sit six hours in an eight-hour workday (citing 20 C.F.R § 404.1567(b))); *see also Whitcher v. Saul*, No. 20-cv-445-jdp, 2021 WL 805570, at *1 (W.D. Wis. Mar. 3, 2021).

As such, the ALJ relied on Dr. Sands's assessment of the medical evidence of record, including the physical therapy records, when assigning the RFC. Consequently, the physical RFC is supported by substantial evidence, and the ALJ's failure to specifically discuss the 2021 physical therapy records is not a basis for remand. *See Wurst v. Astrue*, 866 F. Supp. 2d 951, 963 (N.D. Ill. May 30, 2012) (affirming the ALJ's decision where she afforded substantial weight to the opinion of the reviewing state agency physician, who reviewed the physical therapy notes of record).

2. June 2022 X-rays

Upton also asserts that the ALJ erred by mischaracterizing Upton's June 2022 X-ray evidence. In the "IMPRESSION" section of the X-ray report, the radiologist stated: "DEGENERATIVE DISC DISEASE C4-5 AND C5-6" and "SIGNIFICANT BILATERAL FORAMINAL STENOSIS AT C5-6 AND TO A LESSER DEGREE C4-5." (AR 572). In summarizing these X-rays, the ALJ wrote: "Findings from x-rays taken of the claimant's cervical spine in June 2022, revealed degenerative disc disease with bilateral foraminal stenosis at the C4-C5 and C5-C6 levels." (AR 24 (citation omitted)).

Upton takes issue with the ALJ's reference to "bilateral foraminal stenosis," rather than "*significant* bilateral foraminal stenosis." (*Compare* AR 24, *with* AR 572; *see* ECF 18 at 15-16). He also faults the ALJ for failing to include verbiage from the more detailed "Findings" section of the X-ray report, including "loss of lordosis," "severe left foraminal stenosis at C5-6," and "[m]oderate left foraminal narrowing at C4-5." (ECF 18 at 15 (citing AR 572)).

The Court does not view the ALJ's summation of the X-report as grounds for a remand. It is clear the ALJ did not overlook the report, as she expressly mentioned it in her decision. As such, the ALJ did "not ignore [an] entire line[] of contrary evidence." *Arnett*, 676 F.3d at 592. Nor was the ALJ obligated to expressly mention all the detailed findings in the report. An ALJ must "minimally articulate" her assessment of the evidence to assure the Court that she considered the important evidence and to enable the Court to trace the path of her reasoning. *Berger*, 516 F.3d at 545 (citation and internal quotation mark omitted); *see Rohan v. Chater*, 98 F.3d 966, 971 (7th Cir. 1996). "By 'minimal level of articulation' we mean just that—enough to show that the ALJ considered the evidence the law requires [her] to consider. A more extensive requirement sacrifices on the altar of perfectionism the claims of other people stuck in the queue." *Stephens v. Heckler*, 766 F.2d 284, 288 (7th Cir. 1985). Here, the ALJ sufficiently articulated her consideration of the June 2022 X-ray evidence and "considered the record fairly." *Lord*, 2012 WL 4322742, at 12. Therefore, she has done enough.

Accordingly the Commissioner's final decision will be affirmed.

## IV. CONCLUSION

For the foregoing reasons, the Commissioner's decision is AFFIRMED. The Clerk is

DIRECTED to enter a judgment in favor of the Commissioner and against Upton.

SO ORDERED.

Entered this 10th day of June 2024.

                                                                       /s/ Susan Collins  
                                                                       Susan Collins  
                                                                       United States Magistrate Judge